Thiago M. Coelho, SBN 324715
*thiago.coelho@wilshirelawfirm.com*
Chumahan B. Bowen, SBN 268136
*Chumahan.bowen@wilshirelawfirm.com*
Jesenia A. Martinez, SBN 316969
*jesenia.martinez@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs and all others similarly situated*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO PAREDES, JOLIEN CONNOR, RANDALL SATTERFIELD, SUSAN MAYLE, individually and on behalf of all others similarly situated<br><br>*Plaintiffs*,<br><br>v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION, a Delaware Corporation; FIRST AMERICAN DATA TREE LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Plaintiffs Gilberto Paredes, Jolien Connor, Randall Satterfield, and Susan Mayle (together, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class Members") assert the following allegations against Defendants First American Financial Corporation ("First American Financial") and First American Data Tree LLC ("First American Data Tree") (jointly, "First American"), and Does 1 through 10, inclusive (together, "Defendants"). Plaintiffs bring this action based on personal knowledge as to the facts concerning themselves, and on information and belief as to all other matters, by and through the investigation of their undersigned counsel.

## I. NATURE OF THE ACTION

1. This is a class action seeking to remedy First American's unauthorized commercial use of Plaintiffs' and Class Members' names and identities in connection with First American's DataTree platform.

2. First American operates a nationwide property-intelligence platform known as DataTree. Through DataTree, First American aggregates and sells information concerning real property and about the individuals who own property, or who have owned the property. The DataTree platform generates revenue by selling subscriptions, premium search capabilities, and reports concerning property owners. First American touts that "DataTree is built on the industry's largest database of property and *homeowner information.*"[1]

3. First American offers prospective users a 7-day free trial access to the platform. During the free trial, First American displays the names and identities of real persons after users search for a property.

4. First American uses name and identity attributes as part of its subscription marketing strategy. By showing users the names and identifying information of real persons in property reports, First American increases the perceived value of the DataTree platform and encourages users to register, continue using the service, and purchase a subscription.

---

[1] Press Release, First American Financial Corporation, First American Data & Analytics Adds Enhanced 3D Mapping to Its Industry-Leading DataTree Solution (Nov. 9, 2021), https://investors.firstam.com/investors/news-and-events/news/press-release-details/2021/First-American-Data--Analytics-Adds-Enhanced-3D-Mapping-to-Its-Industry-Leading-DataTree-Solution/default.aspx.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

1

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

5. Upon subscribing, First American advertises that users may search its DataTree platform by "Property Owner Name" as a feature of the commercial platform. After searching for an individual, or that individual is otherwise identified, First American advertises, markets, offers for sale, and sells a variety of paid products, including additional information and reports concerning the identified homeowner, the homeowner's interests, and the homeowner's relationship to properties. Such reports may include: reports concerning judgments associated with the identified homeowner, ownership information and history, mailing address information, occupancy status (including whether the homeowner occupies the property or is an absentee owner), deeds and documents executed by the homeowners, lien and tax information, and access to additional homeowner contact information, including telephone numbers and email addresses, through affiliated services.

6. First American's platform does not merely publish public records. Instead, First American compiles homeowner information into its own database, associates the homeowners with their property and ownership interests, and commercially exploits those identities through its commercial platform. First American derives revenue by marketing its monthly subscriptions and then encouraging subscribers to purchase reports and documents after identifying a homeowner or property. Each purchased report by a subscriber consumes subscription credits or otherwise requires additional payment. First American states that its Data and Analytics business is "powered by our extensive collection of real estate property data, *ownership data* and recorded documents."[2]

7. First American knowingly used Plaintiffs' and Class Members' names as part of a commercial sales platform through which First American advertised, marketed, offered for sale, licensed, and sold commercial information products concerning homeowners and their relationships to properties. First American incorporated Plaintiffs' and Class Members' names into its searchable database, associated those names with real property, and used those names to identify Plaintiffs and Class Members in connection with the advertising, marketing, offering for sale, licensing, and sale

---

[2] First American Financial Corporation, Annual Report (Form 10-K), at 10 (Feb. 17, 2026), https://s21.q4cdn.com/992793803/files/doc_financials/2025/ar/ARS-12-31-25.pdf (emphasis added).

2

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

of First American's commercial reports, subscriptions, documents, and data products.

8.      First American exploits the commercial value of Plaintiffs' and Class Members' identities without the consent required by applicable law. Plaintiffs and Class Members are private individuals who never consented to their names and information being used for First American's commercial purposes. Plaintiffs and Class Members, whose identity attributes were disclosed and used by First American through DataTree for commercial purposes without consent, suffered and continue to suffer damages.

9.      First American's conduct is intentional and commercial. It is not incidental to any news, public affairs, or analogous public-interest function. First American derived and continues to derive substantial revenue through subscriptions, report purchases, document purchases and related commercial transactions generated by this business model.

## II.     THE PARTIES

### A.     Plaintiffs

10.     Plaintiff Paredes is a natural person and citizen of California, residing in Contra Costa County, California. First American maintains and commercially distributes information concerning Plaintiff Paredes through the DataTree platform. Plaintiff Paredes's address was searched as part of First American's free trial access and the results showed Plaintiff Paredes's name as an owner of real property and offered related products for sale. Plaintiff Paredes did not authorize or provide consent for this use.



CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

11.    Plaintiff Connor is a natural person and a citizen of Illinois. Plaintiff Connor owns real residential property in Illinois. First American maintains and commercially distributes information concerning Plaintiff Connor through the DataTree platform. Plaintiff Connor's address was searched as part of First American's free trial access and the results showed Plaintiff Connor's name as owner of real property and offered related products for sale. Plaintiff Connor did not authorize or provide consent for this use.



12.    Plaintiff Satterfield is a natural person and citizen of Alabama, residing in Alabama. Plaintiff Satterfield owns real residential property in Alabama. First American maintains and commercially distributes information concerning Plaintiff Satterfield through the DataTree platform. Plaintiff Satterfield's address was searched as part of First American's free trial access and the results showed Plaintiff Satterfield's name as owner of the property and offered related products for sale. Plaintiff Satterfield did not authorize or provide consent for this use.



WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

4

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

13.    Plaintiff Mayle is a natural person and a citizen of Nevada. Plaintiff Mayle owns real residential property in Nevada. First American maintains and commercially distributes information concerning Plaintiff Mayle through the DataTree platform. Plaintiff Mayle's address was searched as part of First American's free trial access and the results showed Plaintiff Mayle's name as owner of the property and offered related products for sale. Plaintiff Mayle did not authorize or provide consent for this use.



**B.    Defendants**

14.    First American Financial is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is in Santa Ana, California. Upon information and belief, First American Financial owns and oversees First American Data Tree and the DataTree business. First American Financial operates, markets, licenses, and/or sells access to DataTree. Upon information and belief, First American Financial directly participates in, controls, oversees, approves, profits from, and/or ratifies the challenged DataTree business model, including the use of homeowner names and identities in DataTree's free-trial, subscription, and paid-report sales flows. First American Financial conducts substantial business in this District, including the operation and marketing of DataTree, and upon information and belief, the challenged conduct was designed, implemented, and/or directed from California, including conduct affecting users and property records in this District.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

15.    First American Data Tree is a Delaware Limited Liability Company that conducts business throughout the United States. Its principal place of business is in Santa Ana, California. First American Data Tree is a wholly owned subsidiary of First American Financial Corporation. Upon information and belief, First American Financial Corporation owns and oversees First American Data Tree and the DataTree business. First American Data Tree operates, markets, licenses, and/or sells access to DataTree. Upon information and belief, First American Data Tree directly participates in, controls, oversees, approves, profits from, and/or ratifies the challenged DataTree business model, including the use of homeowner names and identities in DataTree's free-trial, subscription, and paid-report sales flows. First American Data Tree conducts substantial business in this District, including the operation and marketing of DataTree, and upon information and belief, the challenged conduct was designed, implemented, and/or directed from California, including conduct affecting users and property records in this District.

16.    The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each Doe Defendant is legally responsible in some manner for the occurrences alleged here.

17.    At all times mentioned herein, Defendants named as Does 1 through 10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiffs and Class Members in this District.

## III.    JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2) because this is a class action, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, the proposed classes include more than 100 members in the aggregate, and minimal diversity exists because Plaintiff Connor is a citizen of Illinois, Plaintiff Satterfield is a citizen of Alabama, and Plaintiff Mayle is a citizen of Nevada. First American is a citizen of Delaware and California for CAFA purposes because it is organized under Delaware law and maintains principal places of business in California.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

19.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims derive from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

20.    This Court has personal jurisdiction over the parties because (a) Plaintiff Paredes is a resident of this District; (b) Plaintiffs Connor, Satterfield, and Mayle consent to jurisdiction in this District; (c) Defendants transact business and have sufficient contacts in this District to have purposefully availed themselves of jurisdiction in this District.

21.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). A substantial part of the events or omissions giving rise to the claims occurred in this District, including First American 's operation, marketing, and design decisions concerning DataTree, as well as the display and use of identity attributes tied to persons and properties located in this District. First American also transacts business in this District and has purposefully directed the challenged conduct into this District. Plaintiff Paredes resides in this District where his property is located. First American made available Plaintiff Paredes's address and name to third parties in this District that provided their payment information for a free trial of the DataTree platform. First American markets and sells its DataTree platform to individuals that reside in this District.

## IV.    GENERAL FACTUAL ALLEGATIONS

### A.    First American and Its DataTree Platform

22.    First American is a title insurance and settlement services company that also promotes itself as the nation's largest resource for property data and analytics.[3] First American provides a service known as First American Data & Analytics that delivers real estate intelligence including data about homeowners through a subscription data platform called DataTree.[4]

23.    First American curates data on millions of homeowners and the homeowners' properties nationwide and represents that its database covers the vast majority of U.S. properties.

---

[3] First American Financial Corporation, *Who We Are*, https://www.firstam.com/about-us/ (last visited July 8, 2026).

[4] First American Data & Analytics, *Access Property Data, Mortgage Data. Ownership Data*, https://dna.firstam.com/ (last visited July 8, 2026).

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

DataTree is not merely a repository of records. First American acquires information from multiple sources, compiles, aggregates, organizes, indexes, and commercializes that information within its DataTree platform.

24.    First American advertised that DataTree "is built on the industry's largest database of property and homeowner information."[5]



25.    First American advertises that DataTree provides instant access to information about homeowners, homeowners' properties, and related mortgage information.

[5] First American Financial Corporation, *First American Launches The All-New DataTree.com*, https://www.firstam.com/news/2015/first-american-launches-the-all-new-datatree-html-20150527.html (last visited July 8, 2026).

8

26. First American advertises that customers may use DataTree to search its platform using homeowner name, property address, assessor's parcel number or by document. Further, First American advertises that its platform provides access to purchase additional information about the homeowner, such as property ownership, recorded documents, liens, personal judgments, mailing address, contact information, and ownership history, amongst others.[6]

27. Depending on the subscription level selected, subscribers pay a monthly fee and receive monthly credits that may be redeemed to purchase reports and documents. Once those credits are exhausted, subscribers purchase additional reports and documents for additional fees.

28. As detailed below, First American held out Plaintiffs' and Class Members' names and identities to customers and prospective customers in connection with the offering of sale and sale of subscriptions, reports, and other commercial products and services.

**B.　First American Uses Plaintiffs' and Class Members' Names and Identities Without Consent to Convert Free-Trial Users into Paying Subscribers**

29. First American offers prospective customers a free trial of its DataTree platform to induce them to purchase paid subscriptions.

30. DataTree's free-trial display of Plaintiffs' and Class Members' names is not the final product purchased by users. Rather, the free-trial display functions as promotional and conversion content for paid subscriptions, additional reports, recorded documents, marketplace products, and affiliated contact-information services.

31. During the free trial, First American displays Plaintiffs' and Class Members' names and identities after users search for real property. Once a real property is selected, First American prominently identifies the homeowner with the associated address, while simultaneously displaying numerous reports related to that individual's ownership interests, available to purchase if the user becomes a subscriber.

---

[6] First American Financial Corporation, *DataTree® Property Data Research*, https://dna.firstam.com/solutions/property-data/datatree-property-research (last visited July 8, 2026).

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

32.     The products and reports include information about the homeowner, such as the homeowner's mailing address, whether the homeowner resides in the home, the homeowner's mortgage information and amount, civil judgments, interests in other properties, and the ability to purchase the homeowner's contact information, amongst others.

33.     Free trial users have limited access to certain reports, including a Property Detail Report. As illustrated in the screenshot below of Plaintiff Paredes's property, the Property Detail Report prominently identifies owner information, including identifying the homeowner by name, vesting information, mailing address, and occupancy status. Further the report provides buyer and seller information, ownership history, transfer history, vesting information, and additional information concerning the homeowner, including his/her mortgage information.



34.     First American uses Plaintiffs' and Class Members' names and identities during the free trial to demonstrate the value of its commercial products and to encourage prospective customers to purchase subscriptions in order to continue obtaining reporting concerning additional homeowners and to purchase additional reports, documents, and products concerning the homeowner and the homeowner's information.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

35.    First American's use of Plaintiffs' and Class Members' names and identities during the free trial is intended to induce prospective customers to purchase subscriptions.

36.    First American uses Plaintiffs' and Class Members' names and identities for purposes of advertising and selling commercial services and products.

**C.    DataTree Displays Identifying Attributes of Real Persons and Uses Plaintiffs' and Class Members' Identities to Advertise and Sell Products**

37.    DataTree does not merely maintain a database of property records. First American affirmatively markets the ability to identify homeowners as a commercial feature of its platform.

38.    First American advertises that subscribers may search its platform using "Property Owner Name" and the ability to target "Prospects".

**Target Properties and Prospects**

Our DataTree solution has intuitive property search functions that aid in your ability to look up an address and works like a popular web search by suggesting as you type. Find the data you need by address, Assessor's Parcel Number (APN), Property Owner Name, or via the interactive map.

39.    Upon searching and identifying a homeowner, the user is provided with a list of properties associated with that homeowner. First American then advertises, markets, and offers for sale additional reports and services concerning that identified homeowner and the homeowner's relationship to real properties. Such additional products and reports include information such as judgments against the homeowner, the homeowner's mailing address, occupancy status, the homeowner's other real property interests, ownership information and history, liens, tax information, and recorded documents signed by the homeowner or in which the homeowner's name appears. Additional homeowner information is also made available for purchase through affiliated commercial services, such as email and telephone contact information.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

40. The ability to identify and search by homeowner name is not incidental to First American's commercial platform. First American affirmatively markets homeowner-name searches as a means of locating information and thereafter use the homeowners' names and identities in connection with advertising, marketing, and offering for sale First American's commercial products.

41. In doing so, First American's DataTree discloses identifiable attributes of real individuals in connection with specific properties and does so in a manner integrated into the user experience of a commercial subscription platform.

42. Those identifying attributes are presented as part of First American's overall value proposition and are used to make DataTree more useful and attractive to prospective subscribers by demonstrating the practical utility of the platform and encouraging paid access.

**D.     First American Uses Plaintiffs' and Class Members' Identities to Advertise, Market, and Sell Commercial Products and Services to Subscribers**

43. First American's commercial use of Plaintiffs' and Class Members' names and identities extends beyond the free trial and continues throughout its paid subscription platform, where First American uses homeowners' names and identities to advertise, market, and sell additional reports, products, and services.

44. Although customers purchase subscriptions to access the DataTree platform, subscriptions do not provide unlimited access to First American's commercial reports. Instead, subscribers receive a specified amount of credit.

45. Customers are charged for each report, document, or product, and the amount is deducted from their monthly credit. Customers who exhaust their monthly credits must pay additional fees for each report.

46. After subscribing, customers receive the ability to perform searches by "Property Owner Name." Regardless of the search method, after a homeowner has been identified, First American advertises, markets, and offers additional commercial products and services concerning the identified homeowners, including products related to that individual's ownership information.

47. Thus, First American's business model is based not only on subscription fees. First American also commercially exploits identifiable homeowners by using their names and identities

12

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

as the means through which is advertises, markets, and sells additional reports, products, and services concerning those homeowners.

**E.     First American Used Plaintiffs' and Class Members' Names and Identities Without Consent for Commercial Purposes**

48.     First American did not merely reproduce or republish public records. Instead, First American acquired information about Plaintiffs and Class Members, and then compiled, standardized, indexed, and incorporated Plaintiffs' and Class Members' identities into its proprietary commercial database.

49.     First American intentionally organized its platform to allow customers to identify and search for particular homeowners, associate those homeowners with properties, locate additional homeowner information, and obtain reports concerning those homeowners.

50.     DataTree compiles and markets comprehensive profiles about individual homeowners. Subscribers can identify and search for a homeowner by name and obtain reports containing the homeowner's identity as well as legal, financial, and contact information about a homeowner. Reports contain the homeowner's mailing address, property ownership information, and, upon information and belief, verified contact details like phone numbers and email addresses. Financially, First American exposes homeowner mortgage and equity information, and provides information about foreclosures, tax delinquencies, bankruptcies, and recorded civil judgments. Finally, First American's DataTree platform allows subscribers to run nationwide name searches to map out entire multi-property real estate portfolios, creating a commercially valuable profile centered on a person's identity.

51.     DataTree further enhances these homeowner profiles by organizing and permitting subscribers to search individuals using numerous demographic, financial, and household characteristics, including age, estimated income, marital status, household composition, occupation, education, language, net worth, and other identifying attributes.   These search capabilities demonstrate that First American's commercial product contains comprehensive, searchable profiles of identifiable individuals, which First American markets and sells through subscriptions, reports, and other paid products.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

52.    First American knowingly appropriated and commercially exploited Plaintiffs' and Class Members' names and identities by compiling, enriching, organizing, and converting their identities into proprietary searchable homeowner profiles that First American marketed, licensed, and sold.

**F.    First American Did Not Obtain the Required Consent**

53.    First American did not obtain prior consent from Plaintiffs' or Class Members' prior consent before using their names and identities in connection with the advertising, marketing, offering for sale, and sale of First American's commercial products and services.

54.    Plaintiffs and Class Members did not consent or authorize First American to use their identities for commercial use.

55.    Likewise, Plaintiffs and Class Members did not consent or authorize First American to identify them through homeowner name searches (or other search methods) and to create, advertise, market, and offer for sale subscriptions, reports and commercial products concerning the Plaintiffs and Class Members.

56.    First American used the names and related identifying information of Plaintiffs and Class Members as features of its DataTree platform to induce the purchase of subscriptions and commercial reports and products.

57.    To the extent First American contends that public records, licensing arrangements, or the public availability of certain information permitted its conduct, that contention does not excuse the separate commercial exploitation of Plaintiffs' and Class Members' identities or eliminate the consent requirement imposed by the applicable publicity statutes. First American used Plaintiffs' and Class Members' names and identity attributes in a commercial sales funnel, not merely as a passive, noncommercial republication of public information.

58.    First American's disclosure and use of those identity attributes was not incidental to any legitimate news, public affairs, or analogous purpose. Rather, it was undertaken to promote First American's paid commercial product and increase revenue. First American knowingly used Plaintiffs' and Class Members' names and identities for its own commercial gain and financial gain without consent.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

59. Plaintiffs and Class Members suffered injury from this unauthorized commercial use, including the loss of control over the use of their identities and the deprivation of the economic value associated with those identities.

### G. Plaintiffs and Class Members Suffered Harm

60. As a result of First American's conduct, Plaintiffs and Class Members suffered injury in fact, including the unauthorized commercial appropriation and disclosure of their identities and related identifying attributes.

61. Plaintiffs and Class Members were deprived of the exclusive control over the commercial use of their identities.

62. First American received the benefit of using those identity attributes to market and sell reports, documents, subscriptions, and other commercial products, while Plaintiffs and Class Members received no compensation and gave no consent.

63. First American's conduct injured Plaintiffs and Class Members in a manner recognized by the applicable state publicity statutes and related protections.

64. The challenged conduct is carried out through standardized platform features and uniform product design.

## V. CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Classes:

a. **California Class:** All natural persons domiciled in California and whose names or identities appeared in or on DataTree products, or whose names were displayed in connection with an offer to purchase, subscribe, activate, or access to DataTree products or services, without prior consent during the period beginning four years before the filing of this Complaint through the present.

b. **Illinois Class:** All natural persons domiciled in Illinois and whose names or identities appeared in or on DataTree products, or whose names were displayed in connection with an offer to purchase, subscribe, activate, or access to DataTree products or services, without prior consent during the period beginning one year before the filing of this Complaint through the present.

15

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

c.  **Alabama Class:** All natural persons domiciled in Alabama and whose names or identities appeared in or on DataTree products, or whose names were displayed in connection with an offer to purchase, subscribe, activate, or access to DataTree products or services, without prior consent during the period beginning two years before the filing of this Complaint through the present.

d.  **Nevada Class**: All natural persons domiciled in Nevada whose names were displayed or used within Nevada by Defendants through DataTree in connection with the marketing, sale, subscription, activation, or purchase of DataTree products, reports, documents, or services without written consent during the period beginning two years before the filing of this Complaint through the present.

66.  Plaintiffs reserve the right to amend the class definitions or propose subclasses as discovery proceeds.

67.  Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers, directors, employees, legal representatives, heirs, successors, assigns, and any judge or judicial officer presiding over this matter and members of their immediate families.

68.  *Numerosity*: The proposed Classes are so numerous that joinder of all Class Members is impractical.

69.  On information and belief, First American's DataTree platform contains identity attributes tied to thousands of individuals in each Class during the class period.

70.  The exact number of Class Members is uniquely within First American's possession, custody, or control, but Class Members can be identified through First American's databases, logs, subscriptions, search histories, and related records, including records reflecting whether a free trial user accessed a report displaying a Class Member's name or other identifying attributes.

71.  *Commonality*: Questions of law and fact common to the Classes include, without limitation:

a.  Whether First American displayed or used Class Members' identity attributes through DataTree for commercial purposes;

b.  Whether First American obtained the requisite consent before doing so;

16

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

c.    Whether First American 's conduct violated the applicable state publicity statutes;

d.    Whether First American  used Class Members' names and identities in connection with its DataTree platform;

e.    Whether First American  displayed class members' names in connection with the marketing of reports and subscription products;

f.    Whether FIRST AMERICAN knowingly engaged in the conduct alleged herein;

g.    Whether FIRST AMERICAN's conduct caused injury to Plaintiffs and Class Members; and

h.    Whether Plaintiffs and the Classes are entitled to statutory damages, actual damages, injunctive relief, disgorgement, restitution, attorneys' fees, and costs, as well as any other appropriate relief.

72.    These questions are capable of classwide resolution because they turn on First American's standardized product design, uniform marketing practices, and common course of conduct applicable to all Class Members.

73.    *Typicality*: This action satisfies the requirements of Rule 23(a)(3) because Plaintiffs' claims are typical of the Classes they seek to represent and arise from the same course of conduct by Defendants. The relief Plaintiffs seek are typical of the relief sought for Class Members.

a.    Plaintiff Paredes's claims are typical of the claims of the California Class because he, like California Class Members, had his name and, where applicable, likeness displayed or used by First American  through the same platform, in the same manner, for the same commercial purpose, and without the required consent.

b.    Plaintiff Connor's claims are typical of the claims of the Illinois Class because she, like Illinois Class Members, had her identity attributes displayed or used by First American through the same platform, in the same manner, for the same commercial purpose, and without the required written consent.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

c.    Plaintiff Satterfield's claims are typical of the claims of the Alabama Class because he, like Alabama Class Members, had his identity attributes displayed or used by First American  through the same platform, in the same manner, for the same commercial purpose, and without the required consent.

d.    Plaintiff Mayle's claims are typical of the claims of the Nevada Class because she, like Nevada Class Members, had her identity attributes displayed or used by First American through the same platform, in the same manner, for the same commercial purpose, and without the required consent.

74.    Each Plaintiff's claims arise from the same practice, course of conduct, and legal theories as those of the Class Members.

75.    *Adequacy*: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, complex class actions, privacy litigation, and consumer-protection cases.

76.    Each named Plaintiff has no interests antagonistic to his or her respective class.

77.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

78.    *Predominance:* Common questions predominate over individualized issues because First American 's conduct, its use of a standardized platform, and its lack of consent present common proof applicable to all Class Members, including whether the platform displayed identity attributes in a standardized way as part of a common subscription funnel.

79.    Any individual questions are secondary and do not defeat class treatment.

80.    *Superiority*: A class action is superior to individual suits because the amounts at stake for any one Class Member is relatively small compared to the cost of individual litigation, while First American 's alleged conduct affected a large number of persons in the same manner.

81.    Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, such that most

18

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions; and the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Rule 23(b)(3)(A).

82.    Class action treatment of this matter presents far fewer management difficulties; far better conserves judicial resources; and the parties' resources; and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Rule 23(b)(3)(D), especially because the claims arise from common platform features and uniform commercial practices.

83.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs, or on its own determination, certify statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law, for classwide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

84.    This action satisfies the requirements of Rule 23(b)(2), because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final relief with respect to each Class as a whole. First American has acted on grounds generally applicable to the Classes, making declaratory and injunctive relief appropriate. Unless restrained, First American will continue the challenged conduct because the platform and business model are ongoing.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

19

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

## VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

**Violation of Right of Publicity, Cal. Civ. Code § 3344**

(On Behalf of Plaintiff Paredes and the California Class Against All Defendants)

85.    Plaintiff Paredes, individually and on behalf of all the California Class, repeats and alleges all foregoing paragraphs 1 through 84 of this Complaint as if fully alleged herein.

86.    California Civil Code § 3344(a) prohibits the knowing use of another's name, on or in products, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods, or services, without prior consent.

87.    First American knowingly used Plaintiff Paredes's and California Class Members' names in its DataTree platform and in connection with DataTree for the express purpose of advertising, promoting, marketing, and soliciting subscriptions to First American and purchases of its data and reports.

88.    First American's use was intentional, commercial, and designed to generate subscription revenue by exploiting the commercial appeal of Plaintiff Paredes's and California Class Members' identities.

89.    First American's use of Plaintiff's and California Class Members' names and identities was directly connected to First American's commercial offering and sale of subscriptions, reports, and commercial products.

90.    First American did not obtain prior consent from Plaintiff Paredes or California Class Members to use their names in this way. Plaintiff Paredes and California Class Members did not consent to First American's use of their names and identities as promotional content, conversion material, or subscription incentives, regardless of whether First American obtained or claims to have obtained the underlying data from public records or licensed sources.

91.    First American's conduct was not incidental or de minimis. It was part of First American's core sales funnel and was used to induce prospective customers to purchase paid access.

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

92.     As a direct and proximate result of First American's unlawful conduct, Plaintiff Paredes and California Class Members suffered injury, including loss of exclusive control over their identities, loss of economic value attributable to their names and the unauthorized commercial exploitation of their names.

93.     Pursuant to California Civil Code § 3344(a), Plaintiff Paredes and California Class Members are entitled to recover the greater of $750 per violation or actual damages suffered as a result of First American's conduct, together with any profits attributable to the unauthorized use that are not taken into account in computing actual damages.

94.     Plaintiff Paredes and California Class Members are also entitled to punitive damages, attorneys' fees, and costs under California Civil Code § 3344(a), as well as preliminary and permanent injunctive relief restraining further unauthorized use to the extent authorized by law.

95.     To the extent First American's conduct involved the knowing exploitation of Plaintiff Paredes's and California Class Members' identities for commercial gain, equitable disgorgement and other relief authorized by law are also appropriate.

## SECOND CAUSE OF ACTION

### California Common Law Right of Publicity and Quasi-Contract Restitution

(On Behalf of Plaintiff Paredes and the California Class Against All Defendants)

96.     Plaintiff Paredes, individually and on behalf of all the California Class, repeats and alleges all foregoing paragraphs 1 through 95 of this Complaint as if fully alleged herein.

97.     Plaintiff Paredes and the California Class plead this claim in the alternative. To the extent statutory damages, actual damages, profits, or other legal remedies do not fully redress the benefit wrongfully retained by Defendants or do not provide complete relief for Defendants' continuing unjust enrichment, Plaintiffs lack an adequate remedy at law and seek restitutionary and equitable relief.

98.     First American knowingly used Plaintiff Paredes's and California Class Members' names and identities for First American's own commercial advantage through DataTree, without consent and without compensation.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

21

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

99. By using Plaintiff Paredes's and California Class Members' named and identities to promote and monetize its subscription services, First American appropriated the economic value of those identities and was unjustly enriched.

100. Plaintiff Paredes and the California Class Members therefore seek restitution, disgorgement of First American's profits attributable to the unauthorized use, and other equitable relief under California common law and quasi-contract principles.

101. To the extent a claim labeled "unjust enrichment" is not independently cognizable under California law, this count is asserted in the alternative as a restitutionary quasi-contract claim.

### THIRD CAUSE OF ACTION

### Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

(On Behalf of Plaintiff Paredes and the California Class Against All Defendants)

102. Plaintiff Paredes, individually and on behalf of all the California Class, repeats and alleges all foregoing paragraphs 1 through 101 of this Complaint as if fully alleged herein.

103. Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of the Unfair Competition Law (UCL), California Business Professions Code § 17200, *et seq.*, by commercially exploiting Plaintiff Paredes's and Class Members' names and identities without their consent to advertise, market, promote, and sell commercial products and services.

104. Defendants' conduct constitutes an unlawful business practice because it violates California Civil Code § 3344 and California common law prohibiting the unauthorized commercial appropriation of another's name and identity.

105. As alleged herein, Defendants' use Plaintiff Paredes's and Class Members' names and identities in connection with its free-trial platform, paid subscription platform, owner-search functionality, and commercial reports to advertise, market, promote, and sell subscriptions, reports, documents, owner information, and related commercial products without obtaining Plaintiff Paredes's or Class Members' prior consent.

106. Defendants' conduct also constitutes unfair business practices.

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

22

107.    Defendants have developed a commercial business model that depends upon identifying homeowners by name, displaying those homeowners' identities, and using those identities to advertise, market, promote, and sell subscriptions and additional products concerning those identified homeowners. Defendants commercially benefit from the value of Plaintiff Paredes's and Class Members' identities while providing no notice, consent, or compensation to those individuals.

108.    Defendants' conduct offends established public policy reflected in California Civil Code § 3344 protecting individuals against the unauthorized commercial exploitation of their names and identities, provides Defendants with an unfair competitive advantage over businesses that obtain consent before commercially exploiting personal identities, and causes substantial injury to Plaintiff Paredes and Class Members that outweighs any legitimate utility of Defendants' conduct.

109.    Plaintiff Paredes and Class Members have suffered injury in fact and have lost money or property within the meaning of California Business and Professions Code § 17204.

110.    Plaintiff Paredes and Class Members possess valuable property interests in their names and identities. Defendants appropriated and commercially exploited those valuable property interests for their own commercial gain by using Plaintiff Paredes's and Class Members' names and identities to advertise, market, and sell its subscription services and related commercial products without authorization or compensation. Defendants thereby appropriated the commercial value of Plaintiff Paredes's and Class Members' names and identities for its own economic benefit.

111.    As a direct and proximate result of Defendants' unlawful and unfair business practices, Defendants have wrongfully obtained revenues, profits, and other economic benefits through the unauthorized commercial exploitation of Plaintiff Paredes's and Class Members' names and identities.

112.    Plaintiff Paredes, individually and on behalf of California Class Members, seeks restitution, disgorgement of monies subject to restitution under California law, injunctive relief prohibiting Defendants continued unlawful practices, attorneys' fees where authorized by law, and all other relief the Court deems proper.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

**FOURTH CAUSE OF ACTION**

**Violation of Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/1, *et seq.***

(On Behalf of Plaintiff Connor and the Illinois Class Against All Defendants)

113.    Plaintiff Connor, individually and on behalf of the Illinois Class, repeats and alleges all foregoing paragraphs 1 through 84 of this Complaint as if fully alleged herein.

114.    The Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/30 prohibits the knowing use of another's identity for commercial purposes without prior written consent.

115.    Defendants knowingly, intentionally, and without prior written consent used Plaintiff Connor's and Illinois Class Members' identities, including their names and other identifying attributes, through DataTree for the express purpose of advertising, marketing, promoting, and selling First American's subscription services.

116.    Defendants marketed, sold, and made DataTree available in Illinois, including through reports tied to Illinois properties. The challenged use occurred within First American's subscription sales funnel and was not merely a neutral republication of public records or other source material.

117.    Defendants' conduct was commercial, willful, and undertaken for pecuniary gain. Defendants used identity attributes as part of a product presentation designed to induce prospective users to register, continue using the platform, and purchase subscriptions to First American's DataTree.

118.    Defendants did not obtain prior written consent from Plaintiff Connor or Illinois Class Members before using their identities in this manner. Plaintiff Connor and the Illinois Class Members did not authorize Defendants to use their identities as promotional features, conversion tools, or subscription inducements, regardless of the original source of the underlying information.

119.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Connor and Illinois Class Members suffered injuries, including the unauthorized appropriation of the commercial value of their identities, loss of exclusive control over the use of their identities, deprivation of the economic value associated with their personas, and other damages recognized under Illinois law.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

120.     Pursuant to 765 Ill. Comp. Stat. 1075/40 and 765 Ill. Comp. Stat. 1075/45, Plaintiff Connor and Illinois Class Members are entitled to recover the greater of actual damages, including profits attributable to Defendants' unauthorized use, or statutory damages of $1,000, or such statutory damages as permitted under 765 Ill. Comp. Stat. 1075/40, together with punitive damages where warranted. The Court may award reasonable attorneys' fees and costs under 765 Ill. Comp. Stat. 1075/55, and any other relief the Court deems just and proper.

121.     Plaintiff Connor and Illinois Class Members are also entitled to disgorgement of Defendants' profits attributable to the unauthorized use, with Illinois Class Members required to prove only gross revenue attributable to the unauthorized use and Defendants required to prove properly deductible expenses, as provided by 765 Ill. Comp. Stat. 1075/45.

122.     Plaintiff Connor and Illinois Class Members are further entitled to preliminary and permanent injunctive relief under 765 Ill. Comp. Stat. 1075/50 prohibiting Defendants from continuing to use, display, monetize, or exploit their identities absent lawful consent.

### FIFTH CAUSE OF ACTION

### Violation of Alabama Right of Publicity Act, Ala. Code § 6-5-770 *et seq.*

(On Behalf of Plaintiff Satterfield and the Alabama Class Against All Defendants)

123.     Plaintiff Satterfield, individually and on behalf of all the Alabama Class, repeats and alleges all foregoing paragraphs 1 through 84 of this Complaint as if fully alleged herein.

124.     Pursuant to the Alabama Right of Publicity Act, Ala. Code § 6-5-771 and § 6-5-772, the unauthorized commercial use of a person's indicia of identity without consent is prohibited.

125.     Defendants knowingly, intentionally, and for commercial gain used Plaintiff Satterfield's and Alabama Class Members' names and other indicia of identity through DataTree to advertise, market, and sell Defendants' subscription products and services.

126.     Defendants used Plaintiff Satterfield's and Alabama Class Members' indicia of identity on or in products, goods, merchandise, or services entered into commerce in Alabama, and for purposes of advertising, selling, and soliciting purchases of Defendants' subscription products and services, including through reports tied to Alabama properties, without consent and outside any applicable statutory exception.

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

127. Defendants offered and marketed its subscription services, free trial program, and commercial reports to consumers in Alabama. Consumers could search for Plaintiff Satterfield and Alabama Class Members by name, view their identity, and purchase subscriptions and reports concerning Plaintiff Satterfield and Alabama Class Members. Defendants' unauthorized commercial use of Plaintiff Satterfield's and Alabama Class Members' identities occurred in connection with products and services that it offered and sold in Alabama.

128. The challenged use was not limited to the passive inclusion of information derived from public records or licensed databases.

129. Defendants did so without obtaining the consent required by Alabama law. Plaintiff Satterfield and Alabama Class Members did not authorize Defendants to use their identities as promotional content, subscription incentives, or conversion tools, regardless of the source of the underlying information.

130. Defendants' conduct was willful, deliberate, and designed to exploit the economic value of Plaintiff Satterfield's and Alabama Class Members' identities for Defendants' own profit.

131. Plaintiff Satterfield and Alabama Class Members suffered injury, including the loss of control over the commercial use of their identities, unauthorized appropriation of their personas, and the deprivation of the value Defendants extracted from their identity attributes.

132. Pursuant to Ala. Code § 6-5-774, Plaintiff Satterfield and Alabama Class Members are entitled to recover actual damages or, at their election after discovery, statutory damages of $5,000 per action, together with any profits attributable to the unlawful use, punitive damages where available, injunctive relief, and such other relief as is authorized by Alabama law and the Court deems just and proper.

**SIXTH CAUSE OF ACTION**

**Violation of Nevada Right of Publicity, Nev. Rev. Stat §§ 597.770, 597.780, 597.790**

(On Behalf of Plaintiff Mayle and the Nevada Class Against All Defendants)

133. Plaintiff Mayle, individually and on behalf of all the Nevada Class, repeats and alleges all foregoing paragraphs 1 through 84 of this Complaint as if fully alleged herein.

26

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

134. Nev. Rev. Stat. § 597.790 provides that every person has a right of publicity in his or her name and that any commercial use by another of that identity attribute requires the person's written consent, subject to statutory exceptions.

135. Nev. Rev. Stat. § 597.770 defines "commercial use" to include the use of a person's name on or in any product, merchandise, or goods, or for the purposes of advertising, selling, or soliciting the purchase of any product, merchandise, goods, or services.

136. Nev. Rev. Stat. § 597.780 provides that the statutory protections apply to any commercial use within Nevada of a living person's name regardless of domicile.

137. Defendants knowingly used Plaintiff Mayle's and Nevada Class Members' names through DataTree in connection with its commercial subscription platform and in the sale of reports and documents to users of the platform.

138. Defendants' use was intentional, commercial, and designed to generate subscription revenue by exploiting the commercial value of Plaintiff Mayle's and Nevada Class Members' identities.

139. Defendants did not obtain Plaintiff Mayle's and Nevada Class Members' written consent before using their names in this manner.

140. The challenged use was not within any of the statutory exemptions in Nev. Rev. Stat. § 597.790, including but not limited to news, public affairs, sports broadcast, original artistic works, or other protected expressive uses. Rather, it was undertaken as part of Defendants' commercial marketing and sales strategy for a subscription product.

141. Plaintiff Mayle and the Nevada Class Members further allege that the challenged use was commercial exploitation of identity attributes within DataTree's subscription sales funnel, not a mere republication of underlying public or licensed records.

142. Defendants offered and marketed their DataTree subscription services, free trial program, and commercial reports to consumers in Nevada. Consumers could search for Plaintiff Mayle and Nevada Class Members by name, view their identity, and purchase subscriptions and reports concerning Plaintiff Mayle and Nevada Class Members. Defendants' unauthorized

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

27

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

commercial use of their identity occurred in connection with products and services offered and sold in Nevada.

143.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Mayle and Nevada Class Members suffered injury, including loss of the economic value associated with those identities, and other harms recognized under Nevada law.

144.    Under Nev. Rev. Stat. § 597.810, Plaintiff Mayle and Nevada Class Members are entitled to injunctive relief to prevent or restrain the unauthorized use, actual damages, not less than $750, and exemplary or punitive damages where Defendants knowingly made use of their names without consent, together with any other relief authorized by Nevada law.

145.    Plaintiff Mayle and Nevada Class Members further seek such other relief as the Court deems just and proper, including costs and any other relief authorized by Nevada law.

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

1.    Certifying this action as a class action under Federal Rule of Civil Procedure 23;

2.    Appointing Plaintiff Paredes as Class Representative of the California Class;

3.    Appointing Plaintiff Connor as Class Representative of the Illinois Class;

4.    Appointing Plaintiff Satterfield as Class Representative of the Alabama Class;

5.    Appointing Plaintiff Mayle as Class Representative of the Nevada Class;

6.    Appointing Plaintiffs' counsel as Class Counsel;

7.    Entering judgment in favor of Plaintiffs and the Classes on all claims;

8.    Awarding actual damages, statutory damages, disgorgement of profits, restitution, and all other monetary relief authorized by Rule 23(b)(3) and applicable law;

9.    Awarding punitive and exemplary damages to the fullest extent permitted by law;

10.    Awarding pre-judgment and post-judgment interest as allowed by law;

11.    Awarding reasonable attorneys' fees, costs, and litigation expenses as allowed by law;

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

12. Entering preliminary and permanent injunctive relief under Rule 23(b)(2) enjoining Defendants from continuing to use, display, monetize, or exploit Plaintiffs' and the Classes' identities and names without lawful consent;

13. Entering declaratory relief under Rule 23(b)(2) declaring Defendants' conduct unlawful; and

14. Granting such other and further relief as the Court deems just and proper.

Dated: July 9, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

/s/ *Jesenia A. Martinez*
Thiago M. Coelho
Chumahan B. Bowen
Jesenia A. Martinez

*Attorneys for Plaintiffs and all others similarly situated*

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

29

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.


Dated:  July 9, 2026                                        Respectfully submitted,

                                                    **WILSHIRE LAW FIRM, PLC**


                                                    */s/ Jesenia A. Martinez*

                                                    Thiago M. Coelho

                                                    Chumahan B. Bowen

                                                    Jesenia A. Martinez

                                                    *Attorneys for Plaintiffs and all others similarly situated*

CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED